UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JUSTIN TAYLOR,

       Plaintiff,

   v.

BAY AREA HOSPITAL; DR. BRETT
DAVIS, *Personally*; McKENZIE GAUNTZ,
RN, *Personally*; REBECCA HOFFMAN,
RNC, *Personally*,

       Defendants.

Case No. 6:22-cv-00868-MTK

**OPINION AND ORDER**

---

**KASUBHAI,** United States District Judge:

      Plaintiff Justin Taylor ("Plaintiff") brings this civil rights action under 42 U.S.C. § 1983, alleging that medical practitioners violated his constitutional rights by restraining him, and non-consensually injecting him with an antipsychotic medication, conducting a blood draw, and inserting a catheter into his penis to obtain a urine sample. Before the Court is a Motion for Summary Judgment filed by Defendants Bay Area Hospital ("BAH") and its two nurses, Rebecca Hoffman ("RNC Hoffman") and McKenzie Gauntz ("RN Gauntz") (ECF No. 52); and an Amended Motion for Summary Judgment filed by Defendant Dr. Brett Davis ("Dr. Davis")

(ECF No. 63).[1] For the reasons explained below, the Motions for Summary Judgment are GRANTED.

## BACKGROUND

On July 6, 2020, Plaintiff Justin Taylor ("Plaintiff") was taken into custody by Reedsport Police after assaulting a gas station employee, harassing customers at the gas station, and being combative and delirious with police. Declaration of Carolyn Pearson (Pearson Decl.), Ex. 1 at BAH 0073, ECF No. 53-1. Plaintiff was brought to BAH by Reedsport Police on a mental health hold. BAH's Answer to SAC at ¶ 1, ECF No. 40; Pearson Decl., Ex. 1 at BAH 0073. BAH, is a public body within the meaning of Or. Rev. Stat. ("ORS") § 30.260 to ORS 30.300. BAH's Answer to SAC at ¶ 6.

When he arrived at BAH, Plaintiff refused to get out of the police car and required five people to get him out of the car and into a wheelchair. Pearson Decl., Ex. 1 at BAH 0073. Thereafter, Plaintiff was combative with staff, including kicking, swinging and attempting to grab staff. *Id.* In response to Plaintiff's conduct, emergency department physician Dr. Davis ordered Plaintiff to be placed in upper and lower body restraints. *Id.* at BAH 0095–96. Dr. Davis worked as an independent contractor with BAH but was not an employee of BAH at the times relevant to this lawsuit. Davis' Answer to SAC at ¶ 7, ECF No. 41.

During his initial evaluation, Plaintiff, a white man, repeatedly exclaimed that he was a black woman of varying heights, who had been raped. Pearson Decl., Ex. 1 at BAH 0080. Dr. Davis began a medical evaluation to determine whether plaintiff was psychotic, delusional, suffering from a methamphetamine psychosis, or functional. *Id.* Dr. Davis ordered a urine drug test, blood serum alcohol test, as well as a comprehensive metabolic panel and complete blood

---

[1] Dr. Davis initially filed a Motion for Summary Judgment (ECF No. 54) which is DENIED as MOOT because it is superseded by his Amended Motion for Summary Judgment (ECF No. 63).

count screening. *Id.* at BAH 0095-95. Dr. Davis also ordered the administration of the antipsychotic medication Olanzapine. *Id.*

BAH employees RNC Hoffman and RN Gauntz obtained the samples ordered by Dr. Davis. BAH's Answer to SAC at ¶ 6. The medical staff repeatedly gave Plaintiff the opportunity to have his upper and lower body restraints removed, if he agreed to cooperate. Pearson Decl., Ex. 1 at BAH 0073-74. Plaintiff was combative and refused to cooperate. *Id.* Per Dr. Davis' order, and without Plaintiff's written or verbal consent, RNC Hoffman injected Plaintiff with Olanzapine. Berman Decl., Ex. 1 (Hoffman Resp. to Pl.'s RFA) at 3, ECF No. 64-1. Plaintiff refused to submit to a blood draw or to voluntarily produce a urine sample. Pearson Decl., Ex. 1 at BAH 0073. RN Gauntz advised Plaintiff that if he did not voluntarily produce a urine sample then she would insert a catheter into his penis to obtain the sample for urinary analysis. *Id.* Over Plaintiff's objections, RN Gauntz inserted a catheter to obtain a urine sample; she also obtained a blood sample. *Id.* at BAH 0073-74.

In deposition, Dr. Davis testified that obtaining and testing these samples was necessary to determine the cause of Plaintiff's "very bad condition." Armosino Decl., Ex. 1 (Davis Dep.) at 67:6-12, ECF No. 73-1. During discovery, Plaintiff requested Dr. Davis to admit that Plaintiff did not present with symptoms that might require an emergency catheterization and intervention to potentially save Plaintiff's life. Berman Decl. (Second), Ex. 1 (Davis' Resp. to Pl.'s RFA) at 2, ECF No. 68-1. Dr. Davis responded that Plaintiff's "presentation was complicated and not classically explicable, requiring additional testing to ensure that he did not have a life threatening illness." *Id.*

When the results from the urinary analysis and blood tests came back unremarkable, Plaintiff was "medically cleared" which allowed someone in the psychiatric department to

evaluate Plaintiff and "determine whether he needed to be brought into the hospital involuntarily to a psychiatric bed or released[.]" Davis Dep. at 67:11-16. There is no evidence that BAH gave Plaintiff's test results to the police.

Ultimately, after no emergency medical condition or psychosis were found, Plaintiff was discharged into police custody. Pearson Decl., Ex.1 at BAH 0077, BAH 0101). When his restraints were removed, Plaintiff became combative and attacked a BAH security guard. *Id.* at BAH 0074. Police officers took Plaintiff to the ground and placed him in handcuffs. *Id.* At the time of his discharge, a Coos Bay police officer reported that Plaintiff was believed to be a mentally ill person who was still a danger to himself or others and in need of immediate care, custody or treatment. BAH 0101.

Plaintiff attests, "I was never threatening or violent with ER staff." Taylor Decl. ¶ 2, ECF No. 66. Plaintiff also attests that RN Gauntz's administration of the catheter "was forceful, crude, not gentle, and it felt as though it was done to maximize pain and discomfort." Taylor Decl., ¶ 4, ECF No. 66.

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Service, Inc.*, 809 F.2d at 630. However, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.". *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

## DISCUSSION

Plaintiff asserts three claims for relief under 42 U.S.C. § 1983: (1) for unreasonable search and seizure in violation of plaintiff's Fourth Amendment rights based upon the involuntary restraints, medication administration, and urine and blood draws; (2) for excessive and unreasonable force in violation of plaintiff's Fourth Amendment rights also based upon the involuntary restraints, medication administration and urine and blood draws; and (3) for violation of plaintiff's Fourteenth Amendment rights due to unreasonable conduct that shocks the conscience. Pl.'s Sec. Am. Compl. ("SAC") ECF No. 38. Plaintiff's claims are brought against RNC Hoffman, RN Gauntz, and Dr. Davis in their personal capacities and against BAH as a public body, pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

## I.    Section 1983 Claims Against Individual Defendants

When prosecuting a civil rights claim under § 1983, a plaintiff must establish that (1) a person acting under color of law (2) deprived the plaintiff of a federal right. 42 U.S.C. § 1983; *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011). Liability under § 1983 arises upon a showing of personal participation by each defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

A.    **RNC Hoffman and RN Gauntz**

The parties do not dispute BAH is a public body and that its employees, RNC Hoffman and RN Gauntz, are considered government officials entitled to assert the affirmative defense of qualified immunity. Plaintiff argues that RNC Hoffman and RN Gauntz are not protected by qualified immunity because disputes of fact prevent summary judgment on the merits of Plaintiff's claims and that under these circumstances, every reasonable officer would have known that their conduct was contrary to Plaintiff's clearly established rights.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). The purpose of qualified immunity is to "strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231)). Qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). District courts have discretion to address either inquiry first. *Pearson*, 555 U.S. at 227. Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly

established or the officer could have reasonably believed that his particular conduct was lawful.

*Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a government official's conduct violates clearly established law, the Supreme Court has emphasized that the asserted right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (brackets and internal quotation marks omitted).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority[.]' " It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

*D.C. v. Wesby*, 583 U.S. 48, 62 (2018) (citations omitted). The plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

The Court addresses the clearly established law inquiry of the qualified immunity analysis at the outset. Plaintiff argues that under *Ellis v. City of San Diego, Cal.*, 176 F.3d 1183 (9th Cir. 1999), *as amended on denial of reh'g* (June 23, 1999), every reasonable government official would have understood that RNC Hoffman and RN Gauntz's conduct violated Plaintiff's constitutional rights.

In *Ellis*, the plaintiff alleged:

> that he was arrested in his home without a warrant, that the officers used excessive force in effectuating his arrest and that, in conjunction with ambulance and hospital personnel, they violated his rights by restraining him, sedating him into unconsciousness, taking blood from his arms, and inserting a catheter into his penis to extract a urine sample against his will and over his objections. He further allege[d] that *the defendants had no cause or justification for their actions* and that they engaged in some of them "simply because he was on parole."

*Id.* at 1186 (emphasis added). After conducting the allegedly involuntary medical procedures, the plaintiff was "returned to the patrol car, where he was given his *Miranda* rights and told that he was charged with numerous offenses including being under the influence of a controlled substance." at 1187.

Regarding the second prong of the qualified immunity analysis, the Ninth Circuit found that it was clearly established in 1995 that under these circumstances:

> blood and urine tests are searches subject to the constraints of the Fourth Amendment, *Schmerber v. California,* 384 U.S. 757, 766, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and that warrantless compulsory blood tests are unreasonable unless supported by both probable cause and exigent circumstances. *Id.* at 768–770, 86 S.Ct. 1826. It was furthermore clearly established at that time that even if the search meets these criteria, it is still unreasonable if the degree of force employed to carry it out is excessive.

*Ellis*, 176 F.3d at 1191–92. The Ninth Circuit explained that the defendant was not entitled to qualified immunity because—at the motion to dismiss stage—the court was bound to accept as true the plaintiff's "allegations regarding the absence of any basis for the body search and his contentions regarding the use of excessive force[.] . . . We do not consider whether [the defendant] might be able to successfully assert qualified immunity later in the proceedings; at this point, however, there is nothing in the record to support [the defendant's] claim [of qualified immunity]." *Id.* at 1192. The Ninth Circuit reversed the district court's decision to grant the motion to dismiss with prejudice and remanded. *Id.*

Here, Plaintiff offers no evidence disputing the fact that Dr. Davis ordered the medical procedures for the express purpose of determining the cause of Plaintiff's perceived medical condition. *Ellis* clearly establishes that compulsory medical procedures performed without a medical justification or with an unreasonable degree of force implicate a person's Fourth Amendment rights. *Id.* Unlike in *Ellis*, the tests were not conducted for law enforcement

purposes and there is no evidence that the results were provided to the police. Plaintiff offers no evidence that any of the medical procedures ordered by Dr. Davis and performed by the nurses were unnecessary or improper under the circumstances. Plaintiff's affidavit briefly describing his perception of RN Gauntz's conduct while she inserted the catheter is insufficient to show that under the circumstances every reasonable officer would know they were using excessive force. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Plaintiff fails to show that under these specific circumstances, every reasonable officer would know that restraining Plaintiff and conducting involuntary procedures for medical purposes violated Plaintiff's Fourth Amendment rights. The Fourteenth Amendment was not at issue in *Ellis*, and Plaintiff therefore fails to show that the asserted violation of that right was clearly established. RNC Hoffman and RN Gauntz are entitled to qualified immunity and summary judgment is granted in their favor.

### B.    Dr. Davis

Dr. Davis first argues that, as an apparent agent of BAH, he is entitled to qualified immunity. Plaintiff responds that Dr. Davis is not entitled to qualified immunity because "apparent agents" of the state are not state employees, and "[a]t all times relevant to plaintiffs' [*sic*] claims Dr. Davis was working within the course and scope of his employment as an independent contractor at Bay Area Hospital." Pl.'s Resp. to Def. Davis' Am. Mot. for Summ. J. at 5, ECF No. 71. Dr. Davis replies that Plaintiff fails to prove that Dr. Davis was acting under color of state law.

Private actors, as opposed to government officials, are generally not entitled to qualified immunity. *Clement v. City of Glendale*, 518 F.3d 1090, 1096 (9th Cir. 2008); *Jensen v. Lane*

*Cnty.*, 222 F.3d 570, 579 (9th Cir. 2000) (private employee doctor who was asked by the government to decide whether to civilly commit a person suspected of a mental illness was subject to suit under § 1983 per state action test but was not entitled to qualified immunity). Dr. Davis admits that he worked with BAH as a private independent contractor and was not employed by a public agency at the relevant time. Davis' Answer to SAC at ¶ 7 ECF No. 41. Following Plaintiff's response in opposition to Dr. Davis' Amended Motion for Summary Judgment, the parties do not dispute that Dr. Davis is not a government official. Dr. Davis is therefore not entitled to qualified immunity.

Resolving this issue, however, presents another; was Dr. Davis acting under color of state law when he treated Plaintiff?

"Acting under color of state law is 'a jurisdictional requisite for a § 1983 action.'" *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) (*West v. Atkins,* 487 U.S. 42, 46 (1988)). Private actors are only subject to liability under § 1983 if the plaintiff can show that the alleged injury was caused by "state action." *Jensen*, 222 F.3d at 574. The Ninth Circuit has "recognized at least four different general tests that may aid us in identifying state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). "At bottom, the inquiry is always whether the defendant has 'exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Rawson*, 975 F.3d at 748 (quoting *West*, 487 U.S. at 49 (quotation marks omitted)).

Whether a defendant was acting under color of state law is a legal question. *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021). "Courts must engage in

'sifting facts and weighing circumstances' to answer what is 'necessarily a fact-bound inquiry.'" *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

To proceed on his § 1983 claims against Dr. Davis, Plaintiff must show that Dr. Davis was acting under color of law. *Jensen*, 222 F.3d at 574 ("in order to prevail under § 1983, a plaintiff must show" that the defendant acted under color of state law). Although courts have found that private doctors in arguably similar circumstances were acting under color of state law, determination of whether Dr. Davis' conduct may be fairly attributed to the state cannot rely on generalizations. *Rawson*, 975 F.3d at 751 (state action test "necessarily" involves "a close, fact-intensive analysis"). Dr. Davis denies that he was acting under color of state law and argues that none of the four so-called "general tests" show that his conduct can be fairly attributed to the state. Plaintiff offers no evidence, or even a legal argument, showing that Dr. Davis was acting under color of state law. He fails to meet the "jurisdictional requisite for a § 1983 action" against Dr. Davis. *West*, 487 U.S. at 46.

## II.    Monell Liability

Plaintiff brings several claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) against BAH. Section 1983 permits a cause of action for constitutional violations by persons. In certain circumstances, a municipality may be held liable as a "person" under § 1983. *Id.* at 690–91. Unlike a claim for negligence, however, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* Liability only attaches where the municipality itself causes the constitutional violation through the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

There are three methods by which a plaintiff may establish municipal liability under *Monell*. First, a local government may be liable where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[s] the injury." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *Monell*, 436 U.S. at 694)). Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [government entity] can reasonably be said to have been deliberately indifferent to the need." *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). Third, a local government may be held liable if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriguez*, 891 F.3d at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).

Here, the parties do not dispute that BAH is a public body subject to suit under § 1983 per *Monell*. However, Plaintiff offers no evidence from which a reasonable jury could find that any of the defendants had final policy-making authority; that someone else at BAH with final policy-making authority engaged in conduct that ratified or directly violated Plaintiff's constitutional rights; or that there was a long-standing pattern, practice, or ratification of unconstitutional conduct. Plaintiff's argument in support of his claims against BAH boils down to an assertion of *respondeat superior*, which cannot serve as a basis of liability under § 1983.

### III.  State Law Claims

Plaintiff argues that Defendants conceded by failing to move for summary judgment on Plaintiff's state law claims. On December 27, 2022, Defendants filed motions to dismiss, arguing that the statute of limitations barred Plaintiff's state law claims. ECF Nos. 31, 32. In response, on January 13, 2023, Plaintiff voluntarily filed his SAC, asserting no state law claims. Under Local Rule 15-1(a)(3), "[a]n amended or supplemental pleading may not incorporate by reference any part of the prior pleading." The Ninth Circuit considers "any claims voluntarily dismissed . . . waived if not repled." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012). The SAC is the operative complaint and contains no state law claims to concede.

## CONCLUSION

For the reasons above, Defendants BAH, RNC Hoffman, and RN Gauntz's Motion for Summary Judgment (ECF No. 52) and Defendant Dr. Davis' Amended Motion for Summary Judgment (ECF No. 63) are GRANTED.


DATED this <u>11th</u> day of April 2025.


<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge